Avigal **RUMPLER**, Plaintiff,

v.

**PHILLIPS & COHEN ASSOCIATES, LTD.**, Defendant.

No. 01 CV 4827(ILG).

United States District Court, E.D. New York.

June 17, 2002.

<hr/>

Adam J. Fishbein, Cedarhurst, NY, for Plaintiff.

Melissa C. Shea, Orenstein & Brown, LLP, New York City, for Defendant.

## MEMORANDUM & ORDER

GLASSER, District Judge.

This action concerns a debt collection letter sent by defendant Phillips & Cohen Associates, Ltd. ("P & C") to plaintiff Avigal Rumpler ("Rumpler"). Rumpler alleges that the letter violates various sections of the Fair Debt Collection Practices Act (the "FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq.* P & C now moves for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment. For the reasons set forth below, P & C's motion is granted.

### BACKGROUND

At some time unspecified in the Complaint, Rumpler allegedly became indebted to Harris Bank in the amount of $2389.43. (*See* Compl. ¶ 1.2 & Ex. A.) Harris Bank then referred Rumpler's account to P & C

for collection. (*See id.* ¶ 1.3.) According to the Complaint, "[u]pon information and belief, [P & C] is a domestic profit corporation and law firm which purportedly maintains an office for the practice of law at 695 Rancocas Road, Westhampton, New Jersey and is a collection law firm within the meaning of the FDCPA." (*Id.* ¶ 0.3.) [1]

After Harris Bank referred Rumpler's account to P & C, P & C sent Rumpler a collection letter (the "Letter"), which forms the basis of this lawsuit. The Letter is in two sections: the top section is a coupon that can be detached from the rest of the Letter and mailed with a payment, and the bottom section is, in essence, an invoice. The Letter is printed on letterhead bearing P & C's name, address and telephone number. The bottom section of the Letter appears as follows:

```
Re:  Client:        HARRIS BANK—2ND
     Client Acct# : 4681211011422863
     Our Acct# :    406503
     Balance:       $2389.43
```

Dear AVIGAL RUMPLER:

Your account has been referred to our office for collection on behalf of the above referenced creditor. To resolve this matter and prevent any further collection activity, full payment must be sent to this office at the address above.

IT IS NOT IN YOUR BEST INTEREST TO NEGLECT THIS ACCOUNT ANY FURTHER! IF YOU HAVE ANY QUESTIONS, IMMEDIATELY CONTACT OUR OFFICE AT THE ABOVE TELEPHONE NUMBER.

Sincerely,

Adam S. Cohen, Esq.

Executive Vice President

## * * IMPORTANT CONSUMER INFORMATION * *

Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you copy of such verification or judgment. If you request this office in writing within thirty (30) days of receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. (Compl.Ex. A.) Mr. Cohen's signature is not on the Letter.

Not long after receiving the Letter, Rumpler commenced this action. Rumpler contends that P & C violated the FDCPA in three ways. First, she alleges that the Letter uses "false representations and deceptive means in an attempt to collect a debt," in violation of 15 U.S.C. § 1692e(10). (*See id.* ¶ 1.15(a).) Rumpler appears to base this claim on her allegation that the Letter was "mass-produced" and "computer generated," and that it was "designed to give the impression that [it] was forwarded by an attorney when [it] was not personally reviewed by an attorney." (*Id.* ¶ 1.10.) Next, Rumpler asserts that the Letter violates 15 U.S.C. § 1692g because it "contradicts [her] right to dispute the debt within the first thirty day period and does not fully and accurately set forth [her] rights." (*See id.* ¶¶ 1.6, 1.15(b).) Finally, Rumpler alleges that P & C violated 15 U.S.C. § 1692j by purportedly "creating a deceptive form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an

1. The Court notes that the term "collection law firm" is nowhere defined in the FDCPA.

attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not participating." (*See id.* ¶ 1.15(c).)

P & C now moves for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, or, in the alternative, for summary judgment. P & C raises three arguments in support of its motion. First, P & C argues that there has been no violation of 15 U.S.C. § 1692g, because the Letter contains a proper "validation notice," and in no way contradicts or "overshadows" Rumpler's right to contest the debt within thirty days of receipt of the Letter. (*See* Def. Mem. at 4–8.) Second, P & C argues that the Letter does not violate 15 U.S.C. § 1692e(10), because the Letter does not falsely imply that it is from a lawyer or law firm threatening litigation. (*See id.* at 8–11.) Lastly, P & C argues that there has been no violation of 15 U.S.C. § 1692j, because that section applies only when a third-party permits its name to be used on mass-produced collection letters (also known as "dunning" letters), but is not otherwise involved in the debt collection process. P & C asserts that, in this case, it is involved in the process of attempting to collect Rumpler's debt to Harris Bank. (*See id.* at 11–13.)

In response, Rumpler's counsel has submitted a document styled as "Plaintiff's Response Affidavit Pursuant to Rule 56(f) of the Federal Rules of Civil Procedure." In that document, Rumpler asks the Court to defer ruling on P & C's motion. Invoking Rule 56(f) of the Federal Rules, Rumpler asserts that there are factual issues in this case for which discovery is needed, and that the Court should not rule on the motion until that discovery has been completed. Rumpler also states that, "[w]hile defendant has also moved pursuant to Rule 12(c), and while plaintiff acknowledges that the 1692g violation can be decided as a matter of law, plaintiff submits that for the sake of judicial economy that the entire motion be deferred so that plaintiff can take sufficient discovery in order to respond to the motion." (Pl. Rule 56(f) Aff. ¶ 6.)

## DISCUSSION

### I. *Judgment on the Pleadings vs. Summary Judgment*

As noted above, P & C has moved for judgment on the pleadings, or, in the alternative, for summary judgment. Therefore, the first task the Court must confront is whether to consider P & C's motion under Rule 12(c) or under Rule 56. The Court chooses to consider the motion under Rule 56.

Rule 12(c) provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." A court may convert a motion under Rule 12(c) into a motion for summary judgment as long as the non-moving party "should reasonably have recognized the possibility that the motion might be converted into a motion for summary judgment," but not where the non-moving party "was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings." *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir.1990) (internal quotation marks and citations omitted).

Here, P & C has submitted a document outside the pleadings, namely, an affidavit of Adam Cohen, P & C's Executive Vice President. In addition, P & C's motion specifically invokes Rule 56, albeit in the alternative of Rule 12(c). Further-

more, Rumpler submitted an "opposition" to P & C's motion in the form of a Rule 56(f) affidavit. Therefore, Rumpler appears to recognize, and concede, that P & C's motion is properly treated as a summary judgment motion. For these reasons, the Court will consider P & C's motion solely as a motion for summary judgment under Rule 56. *See Krijn*, 896 F.2d at 689.[2]

## II. Standard for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions ... together with the affidavits ... show that there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). A "moving party is entitled to judgment as a matter of law [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotation marks and citations omitted). In deciding a summary judgment motion, a court need not resolve disputed issues of fact, but need only determine whether there is any genuine issue to be tried. *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). A disputed fact is material only if it might affect the outcome of the suit under the governing law. A genuine factual issue exists if there is sufficient evidence favoring the nonmovant such that a reasonable jury could return a verdict in her favor. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248–249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "In assessing the record to determine whether there is a genuine issue of fact, the court is required to draw all inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).

## III. P & C is entitled to summary judgment on Rumpler's 15 U.S.C. § 1692e(10) claim

15 U.S.C. § 1692e(10) makes it unlawful for a debt collector to use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." A single violation of Section 1692e(10) is sufficient to establish liability under the Act. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see also* 15 U.S.C. § 1692k.

In order to determine whether a collection letter violates Section 1692e(10), a court must apply the "least sophisticated consumer" test. *See, e.g., Schweizer v. Trans Union Corp.*, 136 F.3d 233, 237 (2d Cir.1998); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993). The purpose of this objective standard is to "ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon*, 988 F.2d at 1318. In applying this standard, a court is required to determine whether the collection letter "can be reasonably read to have two or more different meanings, one of which is inaccurate."

**2.** The Court declines Rumpler's request to defer ruling on P & C's motion in order to permit her to conduct discovery. A party resisting summary judgment on the ground that it needs discovery must submit an affidavit showing (1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) efforts made to obtain those facts, and (4) why the party was

unsuccessful in those efforts. *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999). Rumpler's Rule 56(f) affidavit utterly fails to satisfy this standard. Furthermore, as set forth below, two of Rumpler's claims (under 15 U.S.C. § 1692e(10) and 15 U.S.C. § 1692g) can be resolved as a matter of law, and thus no discovery is needed as to these claims, and Rumpler has not asked for any specific discovery pertaining to her remaining claim.

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir.1996) (citing *Clomon,* 988 F.2d at 1319). The standard, however, reaches only *reasonable* interpretations by the hypothetical "least sophisticated consumer"; it does not "extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice." *Schweizer,* 136 F.3d at 237 (citation omitted); *accord Clomon,* 988 F.2d at 1320.

In her first claim, Rumpler alleges that the Letter was "mass-produced" and "computer generated," and that it was "designed to give the impression that [it] was forwarded by an attorney when [it] was not personally reviewed by an attorney." (*Id.* ¶ 1.10.) Accordingly, Rumpler claims that P & C violated 15 U.S.C. § 1692e(10), because the Letter purportedly used "false representations and deceptive means in an attempt to collect a debt." (*See* Compl. ¶ 1.15(a).)

Rumpler is correct that, in certain situations, falsely implying that a collection letter has been reviewed by an attorney can violate Section 1692e(10). The leading case establishing liability for such conduct is *Clomon.* There, the defendant, an attorney named Jackson, was employed part-time as general counsel for NCB Collection Services, a debt collection agency which collected past-due debts for a company called American Family Publishers ("AFP"). AFP provided NCB with computer disks containing the names and addresses of persons with past-due accounts. NCB then automatically generated collection letters on Jackson's letterhead to those individuals. Each letter bore a reproduction of Jackson's signature, with the following language appearing directly below: "P.D. Jackson, Attorney At Law, General Counsel, NCB Collection Services." Although Jackson approved the form of the letters sent by NCB, he did not have any direct involvement in the mailing of the letters, nor did he review

the files of the individuals with past-due accounts. He also did not review or sign any letter sent by NCB, nor did he give advice to AFP about how to proceed in individual cases. *Clomon,* 988 F.2d at 1316–17. "In short, Jackson never considered the particular circumstances of [the plaintiff's] case prior to the mailing of the letters and he never participated personally in the mailing." *Id.* at 1317. The plaintiff sued after receiving one of Jackson's collection letters on behalf of AFP.

The Second Circuit affirmed the district court's decision granting summary judgment in favor of the plaintiff on her Section 1692e(10) claim. The court stated:

First, the use of Jackson's letterhead and signature on the collection letters was sufficient to give the least sophisticated consumer the impression that the letters were communications from an attorney. This impression was false and misleading because in fact Jackson did not review each debtor's file; he did not determine when particular letters should be sent; he did not approve the sending of particular letters based upon the recommendations of others; and he did not see particular letters before they were sent—indeed, he did not even know the identities of the persons to whom the letters were issued.

.    .    .    .    .

We also note that the language used in the collection letters was sufficient to cause the least sophisticated consumer to believe that Jackson himself had considered individual debtors' files and had made judgments about how to collect individual debts . . . . [T]he collection letters would have led many consumers, and certainly the least sophisticated consumer, to believe that an attorney had personally considered the debtor's case before the letters were sent. This language was false or misleading because, as noted above, Jackson played no day-

to-day role in the debt collection process—and certainly did not engage in any discussion with NCB or AFP about how to collect [the plaintiff's] debt.

. . . . .

We have ... found here that the use of an attorney's signature implies—at least in the absence of language to the contrary—that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent. In a mass mailing, these implications are frequently false: the attorney whose signature is used might play no role either in sending the letters or in determining who should receive them. For this reason, there will be few, if any, cases in which a mass-produced collection letter bearing the facsimile of an attorney's signature will comply with the restrictions imposed by § 1692e.

*Id.* at 1320–21.

Here, P & C asserts that it is entitled to summary judgment on Rumpler's Section 1692e(10) claim because (i) it is not engaged in the practice of law, and (ii) Cohen signed the Letter is his capacity as Executive Vice President of P & C, not as its attorney. (*See* Def. Mem. at 9–10.) Accordingly, P & C argues that Rumpler could not have reasonably believed that P & C was acting as Harris Bank's attorney, or that it was recommending legal action in connection with Rumpler's account. P & C also argues that there are significant differences between the Letter it sent to Rumpler and the letters in the *Clomon* case, rendering that case inapposite.

Under *Clomon*, Rumpler can establish a Section 1692e(10) violation by demonstrating that (i) the Letter implies that it was issued by an attorney, but (ii) the attorney did not actually participate in the debt collection process. Thus, P & C's argument that it is not engaged in the practice of law is irrelevant under *Clomon;* rather,

in order to be entitled to summary judgment, P & C must demonstrate that the "least sophisticated consumer" could not reasonably interpret the Letter as having been issued by an attorney.

▮ However, the Court finds, as a matter of law, that the "least sophisticated consumer" could not reasonably interpret the Letter as having been issued by an attorney. Indeed, the Letter is nothing like the letter sent by the defendant in *Clomon.* That letter was on letterhead stating "P.D. Jackson, G.C., Attorney–at–Law, Offices of General Counsel, 336 Atlantic Avenue, East Rockaway, N.Y. 11518." Thus, there was no way for the letter to be perceived as coming from anyone other than an attorney. In contrast, the Letter in this case is on P & C's letterhead, which nowhere states either "Attorney at Law" or "General Counsel," or gives any other indication that it came from an attorney or a law firm. The Letter simply recites the name of a debt collection business, *viz.*, "Phillips & Cohen Associates, Ltd." Furthermore, Rumpler ascribes too much significance to the fact that "Esq." follows Cohen's name on the Letter. Indeed, any effect in the reader's mind caused by including "Esq." after Cohen's name is blunted by the inclusion of the phrase "Executive Vice President" immediately below. There was no similar qualifying language in *Clomon,* where the defendant's signature was followed by "Attorney At Law, General Counsel, NCB Collection Services."

For these reasons, Rumpler's claim under 15 U.S.C. § 1692e(10) fails as a matter of law, and P & C's motion for summary judgment on this claim is granted.

IV. *P & C is entitled to summary judgment on Rumpler's 15 U.S.C. § 1692g claim*

Pursuant to 15 U.S.C. § 1692g, a debt collection letter must contain (1) the

amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) a statement indicating that, unless the debtor disputes the validity of the debt within thirty days of receiving the debt collection letter, the debt will be presumed valid, (4) a statement indicating that, if the debtor notifies the debt collector in writing within thirty days of receiving the debt collection letter that the debt is disputed, the debt collector will obtain verification of the debt and mail a copy of the verification to the debtor, and (5) a statement indicating that, if requested by the debtor within thirty days of receiving the debt collection letter, the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 1692g(a)(1)-(5).[3] This notice is generally referred to as a "validation notice." *See, e.g., Russell,* 74 F.3d at 32.

■ However, "[i]t is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer—Congress intended that such notice be clearly conveyed." *Russell,* 74 F.3d at 35; *accord McStay v. I.C. Sys., Inc.,* 174 F.Supp.2d 42, 45 (S.D.N.Y.2001) ("the inclusion of a validation notice in a collection letter does not ensure compliance with the FDCPA"). Therefore, when a debt collection letter contains language that "overshadows or contradicts" language in the validation notice, the letter violates the Act. *Russell,* 74 F.3d at 34 (citing *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991)). A debt collection letter is overshadowing or contradictory if it "fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." *Savino v. Computer Credit, Inc.,* 164 F.3d

81, 85 (2d Cir.1998) (citation omitted). In other words, "[e]ven if a debt collector conveys the required information, the collector nevertheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159, 161 (2d Cir.2001).

Here, there is no doubt that the Letter contains the required validation notice. However, Rumpler contends that the Letter nevertheless violates Section 1692g, because it contains language which "contradicts [her] right to dispute the debt within the first thirty day period and does not fully and accurately set forth the plaintiff's rights in violation of 15 U.S.C. § 1692g." (Compl.¶ 1.6.) In other words, Rumpler asserts that the Letter contains language which overshadows the validation notice. The Court does not agree.

■ As noted above, the text of the Letter states:

> Your account has been referred to our office for collection on behalf of the above referenced creditor. To resolve this matter and prevent any further collection activity, full payment must be sent to this office at the address above. IT IS NOT IN YOUR BEST INTEREST TO NEGLECT THIS ACCOUNT ANY FURTHER! IF YOU HAVE ANY QUESTIONS, IMMEDIATELY CONTACT OUR OFFICE AT THE ABOVE TELEPHONE NUMBER.

This language was followed by the validation notice. Even though the Letter states that payment must be sent in order to prevent further collection activity, nothing in this language "overshadows" the validation notice at the bottom of the Let-

---

**3.** Alternatively, a debt collector may opt to include this information in a separate letter, so long as that letter is sent within five days of the "initial communication" with the debtor. 15 U.S.C. § 1692g(a).

ter. Unlike the vast majority of cases in this Circuit in which courts have found similar language to be overshadowing, the Letter in no way demands *immediate* payment of Rumpler's past due debt, or threatens adverse consequences in the event the debt is not paid within 30 days of receipt of the Letter. *See, e.g., Savino,* 164 F.3d at 85–86 (collection letter stating "the hospital insists on immediate payment or a valid reason for your failure to make payment" overshadowed validation notice on back of letter); *Russell,* 74 F.3d at 34–35 (validation notice overshadowed by language in letter stating "if you do not dispute this claim and wish to pay it within the next 10 days we will not post this collection to your file"); *Laster v. Cole,* No. 99–CV–2837, 2000 WL 306848, at *3–4 (E.D.N.Y. Mar. 20, 2000) (letter threatening to make "litigation recommendations" if payment not sent in seven days overshadowed validation notice); *Sokolski v. Trans Union Corp.,* 53 F.Supp.2d 307, 313–14 (E.D.N.Y.1999) (validation notice overshadowed by language in letter stating "[t]o avoid damaging your credit record, please pay the amount at once"); *Beeman v. Lacy, Katzen, Ryen & Mittleman,* 892 F.Supp. 405, 412 (N.D.N.Y.1995) (Pooler, J.) (language in collection letter stating "[p]lease immediately send your remittance, in the above amount, payable to [the defendant], or communicate with us to explain your failure to do so" overshadowed validation notice); *see also Terran v. Kaplan,* 109 F.3d 1428, 1433 (9th Cir.1997) (noting that "[e]very other circuit that has concluded that section 1692g was violated" did so in cases where "payment was demanded within a time period less than the statutory thirty days granted to dispute the debt *and* this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt")(emphasis in original). Simply put, this request for payment is not "confusing" or "contradictory" such that the least sophisticated consumer would be unclear that she had thirty days to dispute the validity of the debt. *See, e.g., Kramsky v. Mark L. Nichter, P.C.,* 166 F.Supp.2d 912, 917 (S.D.N.Y.2001) ("The FDCPA does not prohibit debt collectors from encouraging consumers to pay their debts."); *Kramsky v. Trans-Continental Credit & Collection Corp.,* 166 F.Supp.2d 908, 912 (S.D.N.Y.2001) (same); *see also Beeman,* 892 F.Supp. at 411 (not improper to demand payment in collection letter, so long as letter "clearly express[es] to the consumer that [her] rights to dispute the validity of the debt and to demand verification exist despite the debt collector's right to demand payment").

Furthermore, the language stating that "it is not in your best interest to neglect this account any further" does not in any way overshadow the validation notice. Nothing in this statement would cause a consumer, including the "least sophisticated" consumer, to believe that she had less than thirty days to dispute the validity of her debt. Indeed, in the *Mark L. Nichter, P.C.* case, Judge McMahon reject the contention that language in a debt collection letter stating "[i]t would definitely be in your best interest to satisfy in full your outstanding balance" violated Section 1692g. 166 F.Supp.2d at 916–17.

At bottom, the Letter "makes no demand for immediate payment; it establishes no deadline which arguably could have confused the consumer as to the 30–day dispute period; and it does not make threats which may cause a consumer to misunderstand or ignore his statutory rights." *Madonna v. Academy Collection Serv., Inc.,* No. 3:95CV00875, 1997 WL 530101, at *6 (D.Conn. Aug. 12, 1997) (Cabranes, J., sitting by designation). Accordingly, it does not violate Section 1692g as a matter of law, and thus P & C's motion for summary judgment on this claim is granted.

V. *P & C is entitled to summary judgment on Rumpler's 15 U.S.C. § 1692j claim*

15 U.S.C. § 1692j(a) makes it unlawful to "design, compile and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating." Section 1692j was passed to address a practice in the debt collection industry known as "flat-rating." *Franceschi v. Mautner–Glick Corp.*, 22 F.Supp.2d 250, 256 (S.D.N.Y.1998); *accord Mizrahi v. Network Recovery Servs., Inc.*, No. 98–CV–4528, 1999 WL 33127737, at *7 (E.D.N.Y. Nov. 5, 1999); *Berrios v. Sprint Corp.*, No. CV–97–0081, 1997 WL 777945, at *7 (E.D.N.Y. Nov. 13, 1997).

> A 'flat-rater' is one who sells to creditors a set of dunning letters bearing the letter-head of the flat-rater's collection agency and exhorting the debtor to pay the creditor at once. The creditor sends these letters to his debtors, giving the impression that a third party debt collector is collecting the debt. In fact, however, the flat-rater is not in the business of debt collection, but merely sells dunning letters. This bill [the FDCPA] prohibits the practice of flat-rating because of its inherently deceptive nature.

*Franceschi*, 22 F.Supp.2d at 256 (quoting S.Rep. No. 95–382 (1977), reprinted in U.S.C.C.A.N. 1695, 1699).

Here, Rumpler alleges that P & C violated Section 1692j, but there are absolutely no facts in the record (nor are there any pleaded in the complaint) to support this allegation.[4] In fact, Rumpler's allegation that P & C was not participating in the debt collection process (*see* Compl. ¶ 1.15(c)) is belied by her own allegation that her debt to Harris Bank was "referred to [P & C] for collection" (Compl. ¶ 1.3; *see also* Cohen Aff. ¶ 5). Under similar circumstances, Judge Cote granted a motion to dismiss in *Franceschi. See* 22 F.Supp.2d at 256 (noting that "[t]he plaintiff has failed to allege any facts in [her] complaint that would support a finding of [the defendant's] liability under Section 1692j" because "the complaint itself recognizes that [the defendant] *was* participating in the collection of the debt") (emphasis in original). The Court applies the same logic here, and grants P & C's motion for summary judgment on this claim.

### CONCLUSION

For the foregoing reasons, P & C's motion, which the Court construes as a motion for summary judgment, is granted.

SO ORDERED.

---

4. As noted above, Rumpler has not asked for any specific discovery related to this claim.

(*See* note 2, *supra*.)